IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00809-WDM-CBS

CHARLES WHALEN,
        Plaintiff,
v.

WILEY- Former Warden,
RIOS - Warden,
GUNJA - Associate Warden (Former),
HOLT - Associate Warden (Former),
ORTEGA - Captain (Former),
THREE UNKNOWN S.I.S. OFFICERS (Former),
ONE UNKNOWN S.H.U. LIEUTENANT (Former),
MASOPUST - S.H.U. Lieutenant (Former),
FIVE UNKNOWN UNIT MANAGERS (Former),
FIVE UNKNOWN CASE MANAGERS (Former), and
FIVE UNKNOWN COUNSELORS (Former),
        Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This civil action is before the court on Defendants' Motion to Dismiss filed on

January 16, 2007 by Defendants Wiley, Rios, Gunja, Holt, Ortega, and Masopust (doc.

# 52).[1]  Pursuant to the Order of Reference filed August 9, 2006 (doc. # 16) and the

memorandum dated January 17, 2007 (doc. # 53), the Motion was referred to the

Magistrate Judge.   The court has reviewed the Motion, Mr. Whalen's Response (doc. #

60), the pleadings, and entire case file and the applicable law and is sufficiently

_____

        [1]        None of the other Defendants have been served, as they are unidentified.

1

advised in the premises.

I.     Statement of the Case

Proceeding *pro se*, Plaintiffs Mr. Whalen and Andres Gonzales brought this

action on or about May 2, 2006 pursuant to Title 42 U.S.C. § 1983 and *Bivens v. Six*

*Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). (*See*

Complaint (doc. # 5) at p. 6 of 28).[2]  On July 20, 2006, the court entered an order

dismissing Plaintiff Gonzales. (*See* "Order to Dismiss Plaintiff Andres Gonzales" (doc.

# 10)).

Mr. Whalen began serving a 144-month sentence on December 28, 1995. (*See,*

*e.g.*, doc. # 52-2 at p. 5 of 17).  Mr. Whalen was incarcerated at the United States

Penitentiary in Florence, Colorado ("USP-Florence") from April 4, 2003 to November

19, 2004. (*See* doc. # 52-2 at p. 2 of 17).  Mr. Whalen was transferred to the United

States Penitentiary in Lewisburg, Pennsylvania ("USP-Lewisburg") on November 19,

2004. (*See* doc. # 52-2 at p. 2 of 17).  Mr. Whalen was released from the custody of

---

[2]      "A *Bivens* claim is a constitutional tort claim . . . against federal officers
that is the counterpart to a claim against state officers under 42 U.S.C. § 1983."
*Howard v. Mendez*, 304 F. Supp. 2d 632, 633 (M.D. Pa. 2004).  During the time period
relevant to the Complaint, Mr. Whalen was a federal prisoner confined in a federal
institution and the Defendants were federal employees.  Thus, this action is properly
brought pursuant to *Bivens*, 403 U.S. at 388, not § 1983. *See Correctional Services*
*Corporation v. Malesko*, 534 U.S. 61, 66 (2001) ("The purpose of *Bivens* is to deter
individual federal officers from committing constitutional violations."); *Hron v. Jenkins*,
15 F. Supp. 2d 1082, 1085 (D. Kan. 1998) ("To establish a *Bivens* cause of action, a
party must have some evidence to support finding that [a] federal agent acting under
color of such authority violated some cognizable constitutional right of plaintiff.") (citing
*Bivens,* 403 U.S. at 388).

the Bureau of Prisons ("BOP") on October 26, 2006 via good conduct time release. (*See* doc. # 52-2 at pp. 1, 6 of 17).

Mr. Whalen asserts two claims: (1) that Defendants violated his due process rights by placing him in the BOP's Transfer Pilot Program ("TPP") at USP-Florence without notice or a hearing; and (2) an Eighth Amendment claim regarding the conditions of his confinement while placed in TPP. (*See* Complaint (doc. # 5) at pp. 7-13 of 28).  As relief, Mr. Whalen seeks monetary damages, an apology, and costs. (*See* Complaint (doc. # 5) at p. 28 of 28).

Defendants have moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint for several reasons: (1) failure to exhaust administrative remedies; (2)  the claims are barred by the statute of limitations; (3) failure to state a claim upon which relief can be granted; (4) failure to allege an access to courts claim; (5) failure to allege personal participation by Defendants Wiley, Rios, Gunja, Holt, Ortega, and Masopust; (6) failure to allege a physical injury; and (7) Defendants are entitled to qualified immunity.[3]


II.     Standard of Review

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a Rule 12(b)(6) motion to dismiss, the court accepts the well-pleaded allegations of the complaint as true and

---

[3]     While Defendants also cite Fed. R. Civ. P. 12(b)(1) (*see* Motion to Dismiss at p. 10), they make no argument for lack of subject matter jurisdiction.

construes them in the light most favorable to the plaintiff.  *Ramirez v. Dept. of Corrections*, 222 F.3d 1238, 1240 (10th Cir. 2000) (citation omitted).  Dismissal for failure to state a claim upon which relief may be granted does not require the appearance beyond a doubt that plaintiff can prove no set of facts in support of claim that would entitle him to relief.  *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, ----, 127 S.Ct. 1955, 1968-69 (U.S. May 21, 2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp.*, 127 S.Ct. at 1969.

Pro se pleadings are to be construed liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[a] pro se litigant's pleadings are to be construed liberally") (citations omitted).  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall*, 935 F. 2d at 1110.  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or

4

theories for the plaintiff in the absence of any discussion of those issues").

III.   Analysis

A.   Exhaustion of Administrative Remedies

Defendants move to dismiss Claim One based upon Mr. Whalen's failure to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  Prior to filing this civil action, Mr. Whalen was required to exhaust administrative remedies pursuant to the PLRA.  *Booth v. Churner*, 532 U.S. 731, 741 (2001).  Section 1997e(a) provides:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Defendants have raised the issue of exhaustion by a Motion to Dismiss.  (*See* doc. # 38).  At the time Defendants' Motion to Dismiss was filed, the Tenth Circuit interpreted the PLRA as imposing "a pleading requirement."  *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1210 (10th Cir. 2003), *cert. denied*, 543 U.S. 925 (2004).  "A complaint that fails to allege the requisite exhaustion of remedies [was] tantamount to one that fails to state a claim upon which relief may be granted."  *Steele*, 355 F.3d at 1210.  "In the absence of particularized averments concerning exhaustion showing the nature of the administrative proceeding and its outcome, the action must be dismissed under § 1997e."  *Steele*, 355 F.3d at 1211 (internal quotation marks and citation

omitted).

"The Supreme Court recently rejected our rule in *Steele*, however, and set forth a new standard to govern PLRA lawsuits: 'failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints.' " *Roberts v. Barreras*, 484 F.3d 1236, 1240 (10th Cir. 2007) (quoting *Jones v. Bock*, --- U.S. ----, ----, 127 S.Ct. 910, 921, 166  (Jan. 22, 2007) and citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223 (10th Cir. 2007)).  Now "the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant."  *Roberts v. Barreras*, 484 F.3d at 1241.

After *Jones*, 127 S. Ct. at 910, dismissal under § 1997e(a) for failure to exhaust administrative remedies cannot usually be made on pleadings without proof.  *See Freeman v. Watkins*, 479 F.3d 1257, 1260 (10th Cir. 2007) ("'only in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse'") (quoting *Aquilar-Avellaveda v. Terrell*, 478 F.3d at 1225).  At this stage of the litigation, Defendants have not met their burden of demonstrating that Mr. Whalen has not exhausted his administrative remedies.  Thus, Defendants' request for dismissal of Claim One based on failure to exhaust administrative remedies is properly denied at this time.

B.     *Bivens* Claims and Statute of Limitations

Defendants argue that Mr. Whalen's claims are barred by the applicable statute

6

of limitations.  "A *Bivens* action is subject to the limitation period for an action under 42

U.S.C. § 1983, and that limitation period is set by the personal injury statute in the state

where the cause of action accrues."  *Roberts v. Barreras*, 484 F.3d at 1238 (citations

omitted).  In Colorado, the limitation on personal injury claims is two years.  *See* Colo.

Rev. Stat. § 13-80-102(g) (establishing a two-year limitation period for "all actions upon

liability created by a federal statute where no period of limitation is provided in said

federal statute" and for "all other actions of every kind for which no other period of

limitation is provided");  *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir.1993) (applying

§ 13-80-102 to § 1983 claim).

"Although state law establishes the statute of limitations, federal law determines

when plaintiffs' federal *Bivens* claims accrued."  *Van Tu v. Koster*, 364 F.3d 1196, 1199

(10th Cir. 2004) (citing *Industrial Constructors Corp. v. U.S. Bureau of Reclamation*, 15

F.3d 963, 969 (10th Cir. 1994)), *cert. denied*, 543 U.S. 874 (2004).  "Under federal law,

the statute of limitations on a *Bivens* claim begins to run when the plaintiff knows or has

reason to know of the existence and cause of the injury which is the basis of his action."

*Van Tu*, 364 F.3d at 1199 (internal quotation marks and citation omitted).  *See also*

*Kripp v. Luton*, 466 F.3d 1171, 1175 (10th Cir. 2006) ("[F]or *Bivens* actions (the federal

analogue to § 1983 claims), we have held that a claimant's cause of action accrues

when the claimant knew or had reason to know 'of the existence and cause of injury

which is the basis for his action.'") (citation omitted).  Mr. Whalen's claims arise from

placement in administrative detention ("AD")and the TPP on or about July 16, 2003.

Mr. Whalen filed this *Bivens* action on or about April 12, 2006 (*see* Complaint (doc. # 5)

7

at p. 28 of 28), more than two years after he knew or had reason to know of the existence and cause of the injuries which are the basis of his claims of due process and cruel and unusual punishment.

As an affirmative defense, the statute of limitations may be subject to certain defenses such as waiver, estoppel, or equitable tolling.  *See Rotella v. Wood*, 528 U.S. 549, 560 (2000) (federal statutes of limitations "are generally subject to equitable principles of tolling").  However equitable tolling is employed as an "exception, not the rule." *Rotella*, 528 U.S. at 561.  Mr. Whalen's claims appear to be barred by the statute of limitations, unless Mr. Whalen shows a basis for tolling the limitations period.

Mr. Whalen argues that he "could not file a civil action until complete exhaustion of his administrative remedies. . . ." (Response at p. 4 of 12).  "[E]very circuit to address the issue has held that the filing of a mandatory administrative grievance tolls the statute of limitations for § 1983 and *Bivens* claims." *Roberts v. Barreras*, 484 F.3d at 1241 (quoting *Robert v. Barreras*, 109 Fed. Appx. 224, 226 (10th Cir. (N.M.) Aug. 16, 2004), *cert. denied*, 543 U.S. 1094 (2005)).  Mr. Whalen alleges that he filed mandatory grievances. (*See* doc. # 5 at pp. 15-16 of 28).  The information before the court includes responses to Mr. Whalen's grievances dated from March 2004 to April 2005. (*See* Complaint (doc. # 5) at pp. 17-27 of 28).  The facts currently before the court are not adequate to determine whether Mr. Whalen "pursued administrative remedies such that sufficient tolling occurred to enable [him] to avoid a statute of limitations bar." *Leal v. Georgia Department of Corrections*, 254 F.3d 1276, 1280 (11th Cir. 2001).  Because the statute of limitations defense is not patently clear from the face of the Complaint or

8

based on adequately developed facts, the court is unable to determine on a motion to

dismiss that Mr. Whalen's claims are barred by the statute of limitations. Defendants'

request for dismissal based on the statute of limitations is properly denied at this time.


C.      Failure to State Claim Against Defendants

1.      Due Process Claim

The Fifth Amendment provides that no individual may "be deprived of life, liberty,

or property without due process of law." U.S. Const. art. V. The Due Process Clause

of the Fifth Amendment protects against due process violations by the federal

government. *See Public Utilities Comm'n v. Polak*, 343 U.S. 451, 461 (1952) (Fifth

Amendment applies to and restricts only the Federal Government and not private

persons). In order to succeed under a Fifth Amendment due process claim, a plaintiff

must show a cognizable property or liberty interest. *Weatherford v. Dole*, 763 F.2d

392, 393 (10th Cir. 1985). *See also Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533,

536 (10th Cir. 1995) (due process guarantees of the Fifth and Fourteenth Amendments

apply only when a constitutionally protected liberty or property interest is at stake)

(citation omitted).

Mr. Whalen was placed in administrative detention on July 16, 2003 because he

was the victim of an assault. (*See, e.g.*, Complaint (doc. # 5) at p. 17 of 28). While Mr.

Whalen was in AD, he was also placed in the TPP. The TPP governs transfers of

inmates between high security institutions and requires that before a transfer will be

granted to an inmate in AD, the inmate must remain in AD "for a period of twelve months pending clear conduct." (*See* Complaint (doc. # 5) at p. 17 of 28).  Mr. Whalen was in AD at USP-Florence from July 16, 2003 to November 19, 2004.  (*See* doc. # 52-2).  Mr. Whalen does not challenge his placement in AD.  Mr. Whalen alleges that placement in the TPP constituted a deprivation of a liberty interest that is protected by the Due Process Clause and that he was not afforded due process before placement in the TPP.  (*See* Complaint (doc. # 5) at pp. 7-9, 12 of 28; Response (doc. # 60) at pp. 5-6).

        a.      Atypical and Significant Hardship

        In *Sandin v. Connor*, the Supreme Court held that an inmate's liberty interest is protected under the Due Process Clause if the restraints or conditions imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. 472, 484 (1995).  "The Supreme Court mandate since *Sandin* is that henceforth we are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest." *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) (internal quotation marks and citation omitted).  "[T]he touchstone of the inquiry . . . is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life." *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (internal quotation marks and citation omitted).  Whether

10

confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination. . . ." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997) (citing *Sandin v. Connor*, 515 U.S. at 485-87).

Prisoners do not have a constitutionally recognized liberty interest in a particular security classification nor a constitutional right to be confined in particular prison. *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."); *Meachum v. Fano*, 427 U.S. 215, 228 (1976) ("Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all."); *Frazier v. Dubois*, 922 F.2d 560, 561-62 (10th Cir. 1990) ("a prisoner enjoys no constitutional right to remain in a particular institution and generally is not entitled to due process protections prior to such a transfer. . . .").

Mr. Whalen's allegation of placement in the TPP does not rise to a condition that is sufficiently "atypical" or "significant . . . in relation to the ordinary incidents of prison life" to implicate a liberty interest.  Mr. Whalen having failed to allege the violation of a protected liberty interest, his Claim One for violation of his due process rights is properly dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

11

b.      Code of Federal Regulations

Mr. Whalen also rests his due process claim in part on the Code of Federal Regulations.  (*See* Complaint (doc. # 5) at p. 9, p. 10 ¶ 28, p. 12 of 28).  Mr. Whalen does not identify the section of the Code of Federal on which he relies.  Title 28 C.F.R. § 541.22 addresses administrative detention.  The Tenth Circuit Court of Appeals "has consistently held, albeit by unpublished opinion, that § 541.22 creates no liberty interest under either pre- or post-*Sandin* principles . . . ."  *Jordan v. Federal Bureau of Prisons*, 191 Fed. Appx. 639, 656 (10th Cir. (Colo.) July 25, 2006), *cert. denied*, 127 S.Ct. 2875 (2007).[4]  *See also Malik v. Kindt*, 76 F.3d 393 at * 2 (10th Cir. (Okla.) Feb. 2, 1996) ("a *Bivens* action must be founded upon a violation of constitutional rights and a failure to adhere to administrative regulations does not equate to a constitutional violation") (internal quotation marks and citations omitted) (Table).[5]  To the extent that Mr. Whalen's Complaint is based on the Code of Federal Regulations, it is properly dismissed with prejudice.

2.      Equal Protection

Defendants move to dismiss "plaintiff's Fifth Amendment equal protection" claim. (*See* Motion (doc. # 52) at pp. 10-11 of 18).  First, the court does not perceive that Mr. Whalen is alleging an equal protection claim.  Second, Defendants' Motion argues an improper standard of review on a motion to dismiss.  (*See* Motion (doc. # 52) at p. 11of

---

[4]      A copy of this unpublished case is attached to this Recommendation.

[5]      A copy of this unpublished case is attached to this Recommendation.

18 ("Plaintiff *has failed to provide any proof* that he was treated differently than similarly situated disruptive inmates." (Emphasis added)).  Finally, Mr. Whalen's allegations do not state a claim for an equal protection violation.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  The challenged disparate treatment must be the result of purposeful discrimination.  *Harris v. McRae*, 448 U.S. 297, 323, 100 S.Ct. 2671 n. 26 (1980).  To properly allege an equal protection claim, a plaintiff must plead sufficient facts to "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."  *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).  Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause.

Mr. Whalen has alleged "a significant difference between" the conditions of confinement in AD " versus other general population prisoners" and "the protective custody unit prisoners."  (Complaint (doc. # 5) at p. 13 of 28).  There is no allegation that AD prisoners are similarly situated to general population prisoners or protective custody unit prisoners.  Nor has Mr. Whalen alleged that Defendants acted based upon a discriminatory intent or motive.  *See Watson v. City of Kansas City, Kansas*, 857 F.2d 690, 694 (10th Cir. 1996) ("A plaintiff in an equal protection action has the burden of

13

demonstrating discriminatory intent") (citations omitted);  *Villanueva v. Carere*, 85 F.3d, 481, 485 (10th Cir. 1996) (Although "[t]he discriminatory purpose need not be the only purpose, . . . it must be a motivating factor in the decision").

3.      Eighth Amendment Claim

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).  The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. Amend. VIII.  Certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind.  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  As for the objective component, "extreme deprivations" are required to make out a conditions-of-confinement claim.  *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).  Thus, in a conditions-of-confinement case, a "sufficiently serious" deprivation is shown when "a prison official's act or omission . . . result[s] in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  The subjective component

14

follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297). The "deliberate indifference" subjective standard applies to claims of inhumane conditions of confinement. *Wilson*, 501 U.S. at 303-04. A finding of deliberate indifference requires a showing that the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Under this standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Mr. Whalen alleges that in AD (1) more than two inmates were housed in two-man cells, (2) inmates were not provided educational or counseling programs, (3) commissary privileges, laundry issue, recreation time, and cleaning supplies were limited, and (4) conditions were unsanitary and unhealthy. (*See* Complaint (doc. # 5) at pp. 9- of 28).[6] Mr. Whalen's allegations are vague and conclusory. He has not alleged specific dates, circumstances, or conduct by the named Defendants. For example, he has not alleged any specifics about cell assignments or privileges he was denied. Mr. Whalen's attachments to the complaint contradict his allegations of total denial of educational and counseling programs. (*See* Complaint (doc. # 5) at pp. 21 of 28). His own allegations indicate that cleaning materials were regularly provided, albeit not as frequently as Mr. Whalen desires. (*See* Complaint (doc. # 5) at pp. 11, 24-25 of 28).

---

[6]     Mr. Whalen's allegation of an inadequate law library is addressed at part C. 4., *infra*.

As to the objective component, Mr. Whalen's allegations do not state a claim for deprivation "of the minimal measure of life's necessities," as required to state a claim upon which relief may be granted pursuant to the Eighth Amendment. *Trujillo v. Williams*, 465 F.3d 1210, 1225 n. 17 (10th Cir. 2006) (allegations of limited access to education, employment, religious programming, housing assignment, recreation time and equipment, the telephone, and the commissary did not state an Eighth Amendment claim) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)); *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (allegations were not sufficient to show exposure "to a risk that is so grave that it violates contemporary standards of decency"); *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1337-38 (10th Cir. 2007) (conditions of confinement in most restrictive housing pod "met the basic necessities of life"). The conditions about which Mr. Whalen complains do not rise to the serious level implicating a violation of constitutional rights.

As to the subjective component, Mr. Whalen has not alleged that the responsible prison officials acted with "deliberate indifference." Mr. Whalen has not alleged that Defendants were personally involved in keeping him in those conditions and did so with deliberate indifference to the risk of harm. *See Farmer*, 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). In sum,

Mr. Whalen's allegations are not adequate to state an Eighth Amendment violation.

4.     Personal Participation

Personal participation is an essential allegation in a *Bivens* action.  A defendant may not be held liable merely because of his or her supervisory position.  *See Kite v. Kelley*, 546 F.2d 334, 336-38 (10th Cir. 1976) (plaintiff suing federal officials for constitutional violations under *Bivens* must show affirmative link between defendant's conduct and the alleged constitutional deprivation).  A plaintiff must both allege in the complaint and prove at trial an affirmative link between the alleged constitutional violation and a defendant's participation.  *See Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (for § 1983 claim, affirmative link between the defendant's conduct and any constitutional violation "must be alleged in the complaint as well as proven at trial").

Defendants Wiley, Rios, Gunja, Holt, Ortega, and Masopust argue that Mr. Whalen has failed to plead sufficient facts to demonstrate that they had any personal participation in or any supervisory liability for the alleged violations of Mr. Whalen's constitutional rights.  Mr. Whalen alleges that Defendants "having knowledge of the TPP and whether actually participating in it or not, have a duty and obligation to stop the constitutional violation of plaintiffs' civil rights."  (Complaint (doc. # 5) at p. 8 of 28).  This argument is contrary to the law.  Mr. Whalen's allegations are vague and conclusory.  While he alleges that these Defendants "were present and/or participated in" the TPP and failed "to properly train or supervise their subordinates" (Complaint (doc. # 5) at p. 8 of 28; Response (doc. # 60) at p. 4 of 12), Mr. Whalen does not identify what specific actions the Defendants took that give rise to any constitutional

17

violation.  There are no allegations of specific dates, times, or participants.  There are no allegations that these Defendants had any direct contact with Mr. Whalen, that they were present at the time of the conduct alleged, or that they actually knew of and acquiesced in the alleged violations.

In response to Defendants' Motion, Mr. Whalen attempts to hold Defendant Gunja liable on the basis that he denied a grievance.  (*See* Response (doc. # 60) at p. 3 of 12).  Without a showing of direct responsibility for the alleged violations, Defendant Gunja cannot be held liable for an alleged constitutional violation on the basis that he denied a grievance.  *Cf. Johnson v. G.E.O./Lawton Correctional Facility*, 2005 WL 2739212 (W.D. Okla. 2005) (holding that plaintiff failed to state a claim for relief based upon a defendant's participation in the processing of a grievance; held that the *pro se* plaintiff had not demonstrated the required "affirmative link" between the defendant and the underling constitutional violation).  *See Downing v. Clinton*, 2006 WL 3054314, *15 (E.D. Wash. 2006) (in granting motion to dismiss, held that defendant's receipt of grievances did not establish her personal participation in decisions relating to medical care); *Coates v. Sheahan*, 1995 WL 430950, *2 (N.D. Ill. 1995) (held that grievances submitted to a supervisory official are insufficient to establish that official's personal participation in a constitutional violation).

As Mr. Whalen has not alleged an affirmative link between the alleged constitutional violations and the Defendants' participation, Defendants Wiley, Rios, Gunja, Holt, Ortega, and Masopust are properly dismissed from this civil action.

5.      Access to Courts Claim

Mr. Whalen alleges that "the library was inadequate until prisoners field administrative remedies complaining of inadequate law library books and materials . . . ." (Complaint (doc. # 5) at p. 10 ¶ 25).  Defendants argue that Mr. Whalen's allegation of an inadequate law library does not state a claim for denial of access to the courts. (*See* Motion (doc. # 52) at p. 14 of 18).

A prisoner's constitutional right of access to the courts is accorded by article 4 of the Constitution and the Fourteenth Amendment, as well as by the First Amendment right to petition.  *Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir. 1985).  A prisoner must show that any denial or delay of access to the court prejudiced him in pursuing nonfrivolous litigation.  *Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998).  *See also Trujillo v. Williams*, 465 F.3d at 1226 (to state a claim for denial of access to the courts, a plaintiff "must show that any denial or delay of access to the court prejudiced him in pursuing litigation") (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (requiring that "the alleged shortcomings in the library" actually hinder a prisoner's "efforts to pursue a legal claim")); *Twyman v. Crisp*, 584 F.2d 352, 357 (10th Cir. 1978) ("restricted access to the law library is not per se denial of access to the courts").  Mr. Whalen has not alleged that he was prejudiced in pursuing any litigation.  (*See* Response (doc. # 60) at pp. 7-8 of 12).  Mr. Whalen has submitted many filings in this case, all of which have been accepted and considered by the court.  As prejudice is an essential element of a claim for denial of access to the courts, Mr. Whalen fails to state a claim for denial of access to the courts.

6.      Physical Injury

Defendants have also moved to dismiss Mr. Whalen's request for compensatory

damages on the basis that he failed to comply with the Prison Litigation Reform Act

("PLRA"), 42 U.S.C. § 1997e(e), which bars a prisoner from bringing a civil action "for

mental or emotional injury suffered while in custody without a prior showing of physical

injury." *See* 42 U.S.C. § 1997e(a) and (e);  *Turner v. Schultz*, 130 F. Supp.2d 1216,

1222-23 (D. Colo. 2001) ("[A]lthough claims for mental and emotional distress can be

brought pursuant to § 1983, . . . § 1997e(e) provides that 'such a suit cannot stand

unless the plaintiff has suffered a physical injury in addition to mental or emotional

harms.'") (quoting *Perkins v. Kansas Department of Corrections*, 165 F.3d  803, 807

(10th Cir. 1999));  *Mason v. Schriro*, 45 F. Supp.2d 709, 716 (W.D. Mo. 1999) ("a

review of cases from other courts indicates that [§ 1997e(e)] is most frequently applied

where plaintiff alleges that defendants' actions have caused him to fear physical injury

and fear for his safety and welfare, but he fails to show any physical injury").

Mr. Whalen's allegations do not suggest any physical harm caused to him by the

alleged constitutional violations.  The physical injury requirement applies only to any

mental or emotional injury claim.  To the extent that Defendants are arguing that Mr.

Whalen is alleging a claim for mental or emotional injury, such a claim would fail as a

matter of law for failure to allege any physical injury.[7]

---

[7]      Mr. Whalen's transfer to the general population at USP-Lewisburg and
subsequent release from the custody of the BOP renders moot any request for
injunctive relief related to the conditions of confinement at USP-Florence.  The
Complaint lacks factual allegations of wrongful conduct at USP-Lewisburg or of any
expectation of being transferred back to USP-Florence.  *See Preiser v. Newkirk*, 422

D.    Qualified Immunity

"If a federal prisoner in a BOP facility alleges a constitutional deprivation, he

may bring a *Bivens* claim against the offending individual officer, subject to the defense

of qualified immunity."  *Malesko*, 534 U.S. at 72.  Defendants raise the defense of

qualified immunity.  Whether Defendants are entitled to qualified immunity is a legal

question.  *Wilder v. Turner*, — F.3d —, —, 2007 WL 1677951 (10th Cir. (Colo.) June

12, 2007).

> When [a defendant] asserts a defense of qualified immunity, the plaintiff
> bears a heavy two-part burden. Initially, the plaintiff must show the
> [defendant]'s conduct violated a constitutional right: A court required to
> rule upon the qualified immunity issue must consider, then, this threshold
> question: Taken in the light most favorable to the party asserting the
> injury, do the facts alleged show the [defendant]'s conduct violated a
> constitutional right? If the [defendant]'s conduct did not violate a
> constitutional right, the inquiry ends and the [defendant] is entitled to
> qualified immunity.

*Wilder v. Turner*, 2007 WL 1677951 at * 3 (internal quotation marks and citations

omitted).  *See also Wilson v. Layne*, 526 U.S. 603, 609 (1999) (a court evaluating a

claim of qualified immunity "must first determine whether the plaintiff has alleged the

deprivation of an actual constitutional right at all, and if so, proceed to determine

whether that right was clearly established at the time of the alleged violation.") (citation

omitted);  *Butler v. City of Prairie Village, Kansas*, 172 F.3d 736, 745 (10th Cir. 1999)

(court "must first determine 'whether the plaintiff has sufficiently alleged that the

defendant violated a statutory or constitutional right' . . . If the plaintiff has asserted

_____

U.S. 395, 402-03 (1975) (finding "no reasonable expectation that the wrong will be
repeated").

such a deprivation, *only then* do we inquire 'whether the right was clearly established such that a reasonable person in the defendant's position would have known that his or her conduct violated that right' ") (citation omitted).

Having concluded above that Mr. Whalen has failed to state a constitutional violation, the court need proceed no further on the qualified immunity issue.  *See Christiansen v. City of Tulsa*, 332 F.3d 1270, 1278 (10th Cir. 2003) (court "need not reach the question of whether the individual defendants are entitled to qualified immunity if [it] determine[s]. . . , that plaintiffs failed to sufficiently allege the violation of a constitutional right").[8]


IV.    Conclusion

IT IS RECOMMENDED that Defendants' Motion to Dismiss filed on January 16, 2007 (doc. # 52) be GRANTED and this civil action be DISMISSED as to all Defendants, including the unidentified Defendants, for failure to state a claim upon which relief can be granted.


**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and

---

[8]    Because the court finds no claim stated for a Fifth Amendment or Eighth Amendment violation, Defendants Wiley, Rios, Gunja, Holt, Ortega, and Masopust cannot be held liable.  *Martinez v. Mafchir*, 35 F.3d 1486, 1491 (10th Cir. 1994) (without an underlying violation, there can be no supervisory liability) (citation omitted).

recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made. 28 U.S.C. § 636(b)(1). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. *See In re Griego*, 64 F.3d at 583; *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *One Parcel of Real Property*, 73 F.3d at 1060. Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to

preserve an issue for *de novo* review by the district court or for appellate review);

*International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52

F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the

magistrate's order, cross-claimant had waived its right to appeal those portions of the

ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to

file objections, plaintiffs waived their right to appeal the magistrate's ruling).  *But see,*

*Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does

not apply when the interests of justice require review).

        DATED at Denver, Colorado, this 16th day of July, 2007.

                                BY THE COURT:


                                   s/Craig B. Shaffer
                                United States Magistrate Judge